| Markh v Chen |
| :---: |
| 2025 NY Slip Op 31513(U) |
| April 28, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 451333/2025 |
| Judge: Jeffrey H. Pearlman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   HON. JEFFREY H. PEARLMAN            PART                    44
                                                    *Justice*

-----------------------------------------------------------------------X   INDEX NO.        451333/2025

LENNY MARKH, MARIYA MARKH, AIYUN LI, MICHAEL D              MOTION DATE        4/25/25
BENJAMIN, STUART HEIER, SUSAN A. LIEBMAN

                                                           MOTION SEQ. NO.        001
                                    Petitioners,

                        - v -

JANICE CHEN, BOARD OF ELECTIONS IN THE CITY OF              **DECISION + ORDER ON
NEW YORK,                                                        MOTION**

                                    Respondents.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 32, 34, 36, 37, 39, 40, 41

were read on this motion to/for              ELECTION LAW - INVALIDATE PETITION            .

Upon the foregoing papers, and after oral argument and hearing held before the Court on the record, respondent-candidate Janice Chen (Respondent), candidate for Civil Court Judge, Kings County, moves for an order dismissing the petition to invalidate her designating petition pursuant to CPLR 3211(a)(1)(5) and (7) for failure to properly serve her with specifications of objections as required by Election Law § 6-154 (3)(b). On April 14, 2025, petitioners-objectors Lenny Markh, Mariya Markh, Aiyun Li Michael D. Benjamin and Stuart Heier (collectively referred to as the Petitioner-Objectors) and petitioner-aggrieved-candidate Susan A. Liebman (Petitioner-Aggrieved Candidate), commenced the within invalidating proceeding against respondent-candidate and the Board of Elections (the Board) pursuant to Election Law §§ 16-100, 16-102 and 6-116.

The matter was initially brought in brought in New York State Supreme Court, Kings County, with the order to show cause signed by the Hon. Robin K. Shears, J.S.C. On April 16,

[* 1]

2025, the instant matter was transferred from Kings County, Civil Term, to New York County, Civil Term by the administrative order of the Deputy Chief Administrative Judge Adam Silvera, along with two other matters, one involving many of the same Petitioner-Objectors (Index No. 451334/2025) seeking to invalidate the designating petition of another candidate for Civil Court Judge, Janis P. Purvis, and the other involving Ms. Purvis' anticipatory validation petition (Index No. 451339/2025). A court notice was uploaded to NYSCEF directing the parties and their counsel to report to New York County Supreme Court Special Election Part 44 on Monday, April 21, 2025.

On that day, the Respondent filed the instant motion to dismiss, and both parties were heard on the record regarding the parties' respective positions, with the Court providing the parties additional time to brief the issues raised therein. On April 22, 2025, the Court issued an order that referred the matter for Special Referees to hear and report on the line-by-line review of the subject volumes of Respondent's designating petitions. What is more, the Court issued another order that directed the Board to transfer the identified petition volumes from their Kings County offices to their facilities located at 200 Varick Street, New York, N.Y. The line-by-line review of the volumes began on Wednesday April 23, 2025 and continued through Friday April 25, 2025, with Special Referee Rebecca Wohl and Special Referee BB Liu reviewing challenged signatures by volume.

## I.    Respondent's Motion

As stated in her memorandum of law, Respondent herein moves for:

> an Order and Judgment, pursuant to CPLR § 3211 (a)(1), (5) and (7); NY Election Law § 6-154(2), (3)(b) and Rule(s), H1, H1(b), H3, H6 and H15 of the "Designating Petition & Opportunity to Ballot Petition Guidelines for Primary Elections," issued by the Respondent-Board of Elections in the City of New York on February 11, 2025, denying the relief requested by Petitioner's Order to Show Cause in its entirety; (ii) an Order and Judgment

dismissing the Verified Petition in its entirety; (iii) an Order and Judgment granting the counterclaim in Respondent-Candidate's Proposed Verified Answer, declaring her Designating Petition valid in all respects; (iv) an Order and Judgment directing that Respondent Board of Elections place the name of Respondent-Candidate on the ballot for the Public office of Judge of the Civil Court of the City of New York, Kings County.

Respondent contends, among other things, that the instant petition should be dismissed, because the Petition is defective. Specifically, the Respondent argues that the Petitioner-Objectors and Petitioner-Aggrieved Candidate have failed to satisfy a condition precedent to initiating the instant action, namely failing to fulfil the requirements of Election Law § 6-154 that requires objectors to serve specifications of objection (typically referred to as "specifications" or "specs") on candidates. Respondent posits that such service is a mandatory requirement to confer standing to a petitioner and for any objections to be considered by the Court. Instead of being served with the specification of objections filed by Petitioners with the Board of Elections, the Respondent notes that she was mistakenly served with specifications of objections for Ms. Purvis, the other challenged candidate for the position of Civil Court Judge in the related matter.[1] As part of an affidavit by Respondent, she alleges that on April 14, 2025, she was in fact served with a package, and when she opened the package she "discovered were the Specifications of Objection ('specs') to the Petition of Janice Purvis, a candidate for the Civil Court of the City of New York, Assigned Vacancy #12" (NYSCEF doc. no. 14 at ¶ 6).

Respondent contends that Petitioner-Objectors and Petitioner-Aggrieved Candidate (collectively Petitioners) failed to effectuate and complete service of their specifications of objections to Respondent-Candidate and that this failure deprives this Court of its authority to proceed with the petition, as such failure is a jurisdictional defect. In support of this position,

---

[1] This matter, *Lenny Markh et al v. Janice P Purvis et al*, Index No. 451334/2025, was discontinued by the parties pursuant to stipulation dated April 25, 2025.

[* 3]

Respondent cites to recent legislative amendments to Election Law § 6-154, which now require objectors to serve Specifications of Objections on candidates as a mandatory requirement for any objections to be considered. Election Law § 6-154(b) provides, in pertinent part, that:

> (b) No specifications of objections to any petition, certificate of nomination or ballot access document will be considered unless the objector filing the specifications personally delivers or mails by overnight mail a duplicate copy of the specification to each candidate for public office named on the petition. Objections and specifications to a petition for an opportunity to ballot must be served on the persons named as the committee to receive notices. In the case of a petition containing candidates for party positions, service of the specifications shall be made on either the named candidates or the first person named on the petition's committee to fill vacancies. Service shall be made on or before the date of filing of any specifications with the officer or board. Proof of service shall accompany the specifications or be received by the end of two business days following the filing of the specifications, whichever is later.

The "Board of Elections Designating Petition Guidelines," Rule H6 provides, in pertinent part, that:

> No specifications of objections will be considered unless the objector filing the specifications personally delivers or mails by overnight mail a duplicate copy of the specification to each candidate for public office named on the petition or certificate.

In sum, Respondent argues that Petitioners failed to serve their alleged specifications on Respondent-Candidate within the requisite statutory timeframe and, as such, are barred from now serving them. As a result, Respondent concludes that the petition should be dismissed.

## II.     Petitioners' Opposition

Petitioners contend that service of the specifications on the candidate for public office named on the petition is not a condition precedent to initiating the instant proceeding. Specifically, Petitioners argue that Election Law § 16-102(1) explicitly provides that the designation of any candidate for a public office may be contested in a proceeding instituted in the Supreme Court by

any aggrieved candidate or by a person who has filed objections. Stated otherwise, Petitioners highlight that there is a distinction between a so-called "aggrieved candidate" petitioner and a non-candidate "objector" petitioner.

Petitioners state that a citizen-objector's standing to commence – and to prosecute – these proceedings is predicated on their status as objectors, meaning that they have properly filed general objections with the Board of Elections, as well as having properly served and filed specifications of objections. If the Commissioners of the Board of Elections (the Commissioners) dismiss the Petitioner-Objector's objections, then the Petitioner-Objectors lose standing to prosecute their citizen-objector invalidating proceeding.[2]

However, notwithstanding the rulings made by the Commissioners on the objections filed by the citizen-objectors, Petitioners herein argue that the aggrieved candidate lawsuits will survive. Petitioners assert that the aggrieved candidates standing to prosecute an invalidating proceeding is based on their status as opposing candidates. Stated otherwise, an aggrieved candidate has standing to seek to invalidate an opponent's designating petitioner, irrespective of the Commissioner's rulings on previously filed objections.

III.    Analysis

Turning to the issue of whether Petitioners' failure to properly serve Respondent with the specification of objections is a fatal defect, the Court notes that Petitioners concede that proper service of the specifications of objections was not effectuated on the Respondent. Rather, Petitioners argument is that such failure is not fatal to the instant proceeding brought pursuant to Election Law § 16-102(1).

---

[2] The Commissioners are scheduled to render their decision on this matter on April 28, 2025.

[* 5]

As to the Petitioner-Objectors, the Court finds Election Law § 6-154 requires objectors to properly serve specifications of objection on candidates as a mandatory requirement for any objections to be considered. The language cited above as part of "Board of Elections Designating Petition Guidelines," Rule H6 is clear and explicit. Moreover, case law addressing similar prior rules of the State Board of Elections (State Board) and local boards, support the position that such service is mandatory and that the failure to so serve deprives the Board, and therefore, the Court, of jurisdiction to consider objections (*see Matter of Neal v Liscum*, 164 AD3d 1540, 1541-1542 [3d Dept 2018]; *Matter of Young v Thalmann*, 286 AD2d 550, 551 [3d Dept 2001]; *Matter of Moran v Board of Election of City of N.Y.*, 122 AD2d 908, 908-909 [2d Dept 1986]).

In considering the service at issue here, it is undisputed that while the FedEx package was addressed to the correct street address of Respondent, it did not contain the correct specifications of objections, and instead contained the specification of objections for another candidate, namely Janice Purvis. As stated above, the Petitioners do not dispute this. Accordingly, this Court finds that Respondent was not properly or timely served pursuant to Election Law § 6-154 (3) (b), and all claims made by Petitioner-Objectors are dismissed on such procedural grounds.

On the other hand, the Court accepts the distinction between the standing of the citizen-objectors and an aggrieved candidate pursuant to the Election Law. As to the Petitioner-Aggrieved Candidate, the Court finds that the requirement as set forth in Election Law § 6-154 is not a condition precedent to initiating suit and, as a result, failure to serve the specifications prior to commencement of the proceeding not a fatal defect as to her claims. Rather, the critical inquiry is whether Respondent Chen received "*adequate notice* of which signatures on his or her designating petition are being challenged and the grounds thereof" in advance of the hearing (*Lancaster v Nicolas*, 153 AD3d 829, 830-31 [2d Dept 2017] [citations omitted, emphasis supplied]).

[* 6]

Although not cited by the parties, two Appellate Division, Second Department cases directly speak to this issue. Given the extremely time-sensitive and fact-specific nature of invalidating proceedings, review of these cases is pertinent. First, in *Matter of Lancaster v Nicolas*, petitioner commenced an invalidating petition on July 26, 2016. The aggrieved candidate served and filed her specifications on August 2, 2017, six days beyond the statutory deadline. As it was undisputed that the 135 signatures at issue were invalid because they belonged to individuals who were out of district, the only issue was whether the Court could consider the untimely objections. The parties fully briefed the issued, and the oral argument was held on August 10, 2017. The Appellate Division reversed the trial court's decision, holding that:

> Here, the court erred in concluding that the specifications of objections of the aggrieved candidate were untimely due to their being served six days beyond the statutory deadline. An aggrieved candidate is not bound by the strict time constraints governing the filing of objections set forth in Election Law § 6-154...[T]he respondent was served with the aggrieved candidate's specifications of objections on the distinct ground she raised as to the signatures at issue several days before the matter was briefed and heard. As such, the respondent had adequate notice of the grounds for objecting to the signatures at issue to enable him to prepare his defense. *Lancaster*, 153 AD3d at 831.

Since it was undisputed that the challenged signatures were invalid, the Court found that there were insufficient remaining valid signatures for the respondent to remain on the ballot.

Next, the Appellate Division, Second Department matter of *Matter of Alfieri v Bravo*, 172 AD3d 1360 (2d Dept 2019) provides additional insight. In *Alfieri*, objectors filed objections and specific objections. A petition to validate and a petition to invalidate candidate Victor Alfieri's designating petition were filed. The parties appeared on these matters before the Court on April 22, 2019, at which the invalidating petitioners filed a bill of particulars asserting additional objections to approximately 150 signatures. Citing *Lancaster*, the Court held that the candidate respondent was served with the bill of particulars prior to the commencement of the hearing on the

validation and invalidating petitions, and he therefore "...had adequate notice of the invalidating petitioners' grounds for objecting to the additional signatures identified in their bill of particulars to enable him to prepare his defense" (*Alfieri v Bravo*, 172 AD3d 1360, 1364 [2d Dept 2019]). The Board was able to rule on the specifications provided and the additional specifications submitted in the bill of particulars, leaving approximately 14 signatures in total requiring a line-by-line review for the invalidating proceeding (1,514 [signatures found valid by the board] - 1,500 [signatures needed for the candidacy sought]).

The circumstances presented here are drastically different from the facts in either *Lancaster* or *Alfieri*. The candidacy sought here is for Judge of the Civil Court of the City of New York, Kings County, which requires 4,000 signatures. As per the clerk's report, Respondent-candidate submitted 10,360 signatures to the Board for review.[3] Of those, the Board found 5,851 signatures to be valid. Additionally, Petitioner submitted *de novo* objections, or objections not submitted to the Board, on a majority of the 10,360 total signatures, which were annexed to their bill of particulars. The bill of particulars was filed and served on April 22, 2025. The hearing to review 5,851 signatures, in addition to the *de novo* challenges, began on April 23, 2025 at 10:00 a.m.[4]

At the outset, the sheer volume of signatures to be reviewed here, unlike in *Lancaster* (150 signatures challenged) and Alfieri (14 signatures at issue), is staggering, especially given that "Election Law proceedings are subject to severe time constraints, and they require immediate action" *Matter of Master v Pohanka*, 44 AD3d 1050, 1052 (2d Dept 2007).

---

[3] Respondent Chen did not file a petition to validate that could revive her petition if 3,999 or below reached.

[4] This expedited time frame reflects both the large volume of petition signatures at issue and the narrow period to conduct this hearing, as the Appellate Division, First Department has set April 28, 2025 as the deadline to perfect appeals.

**451334/2025**                                                                 **Page 8 of 15**

The extremely limited notice provided here, viewed through the prism of the massive number of signatures challenged, requires a different result than in *Lancaster* or in *Alfieri*. It would be contrary to the principles of due process to hold that the time between April 22nd when the Bill of Particulars was filed and served, and 10:00 a.m. on April 23rd when the line-by-line commenced, constitutes sufficient notice of the thousands of Petitioner's objections to over 10,000 signatures. The Court, the parties, and counsel are all acutely aware of the challenges presented in this matter, including a delayed clerk's report and extremely truncated timetable. As such, it is of even more importance here that petitioners properly served respondent-candidate. Additionally, Petitioners did not take any steps to immediately cure the issue upon being notified of the service problem at counsel's first appearance on April 18, 2025.

Accordingly, on the facts presented here, Respondent did not have the requisite "adequate notice" of which signatures on the designating petition are being challenged in advance of the hearing (*Lancaster v Nicolas*, 153 AD3d 829, 830-31 [2d Dept 2017]). As such, the petitioner-aggrieved candidate's petition is also dismissed on procedural grounds.

IV.   Line-By-Line Review

As noted above, the petition with respect to the Petitioner-Objectors, and the petition with respect to the Petitioner-Aggrieved Candidate, is dismissed based on the procedural defects detailed herein, and the Court therefore need not consider the merits. However, even assuming *arguendo* that the Court was to consider the merits, there is no reason to believe that the result would be different.

By way of background, following the first appearance on April 18, 2025, the Court directed an additional briefing schedule for the motion as well as signed an order of reference sending the

[* 9]

issue of the line-by-line review to referee(s) to hear and report. Over Respondent's objection, given the extremely limited time to conduct the review, the Court directed that the motion and the line-by-line review to be handled concurrently. To best effectuate the line-by-line review, two referees were tasked with apportioning the subject 19 volumes of designating petitions and conducting line-by-line reviews in tandem.

The referees began the line-by-line review on April 23, 2025. Counsel stipulated that the candidate requires 4,000 signatures on her designating petition. At that time, the clerk's report had not yet been completed, as the Board had not yet made rulings on the specifications provided to it. However, as previously noted, Petitioners submitted two categories of objections, namely, those that were filed with the Board and *de novo* objections. As such, the referees reviewed only *de novo* challenges until the issuance of the clerk's report. During this portion of the review, the referees made rulings on 255 signatures, validating 223 signatures and invalidating 32 signatures (12% invalidation rate). The day was punctuated by numerous objections by counsel, which required judicial intervention via telephone conference held on the record.

The clerk's report was issued at the end of the day on April 23, 2025. The Board had considered the 10,360 signatures submitted by Respondent, and deemed 5,851 of those signatures to be valid. The next day, April 24, 2025, the scope of the review changed upon receipt of the clerk's report. The referees began reviewing the following: (1) all objections on signatures found to be valid by the Board (not as specified [NAS]) and (2) *de novo* objections on signatures found to be invalid by the Board (as specified [AS]). This procedure continued through April 25, 2025. Over April 24th and April 25th, the referees made rulings on 465 signatures, finding 358 signatures to be valid and 107 signatures invalid (23% invalidation rate). The Court also notes that the three days of line by line-by-line review were not aided by Petitioners' failure to consistently have

counsel at the Board for much of the review and use of non-lawyer staff persons instead, as well as Respondents' repeated refusal to move forward without contemporaneous intervention and rulings by the Court via telephone.

As part of a hearing on April 25, 2025, this Court directed the parties to provide letter briefs by Monday, April 28, 2025 at 10:00 a.m. on the issue of whether the number of challenged signatures reviewed by Special Referee Rebecca Wohl and Special Referee BB Liu represented a statistically significant number sufficient for this Court to make a determination regarding the Petitioners' likelihood of success. In sum, of the 720 total signatures ruled upon, the referees found 581 signatures to be valid, and 139 signatures to be invalid (20%).

In the letter briefs filed on April 28, 2025, Respondent (NYSCEF doc. No. 40) argued that the Court already has before it a statistically significant random sample on which to support a decision to cease the line-by-line review, and Respondent supported this argument with mathematical formulas and statistical analysis of the rulings already made thus far. Respondent argues that that these rulings by the referees show that Petitioners' chances of sustaining enough specifications to invalidate candidate Chen's Designating Petition are "ostensibly unachievable." In contrast, Petitioners (NYSCEF doc. No. 41) argue that it would be erroneous to make any inference based on the rulings the referees have made thus far, as the invalidity rate in the 1,110-page petition is not homogenous, but instead varies greatly from page to page.

Despite Petitioners' arguments, Petitioners failed to bring the Court's attention to any particular volume, or even any particular set of pages, that have not yet been reviewed by the referees and in which the percentage of invalid signatures are significantly higher than the referees' general findings thus far. Further, there is caselaw to show that when the number of signatures is voluminous and the time is short, as is the situation here, courts have necessarily resorted to using

451334/2025

**Page 11 of 15**

a statistical sampling of the rulings made by the referees. *See, e.g. Codd v Barbaro*, 111 Misc 2d 135, 145-46 [NY Cnty Sup Ct 1981]:

> [...] I nevertheless requested the referee to make a line by line examination of the 1009 signatures obtained by such witness. Rather than perform an entire review of such signatures the referee, because of the time limitations referred to above, applied a percentage of valid signatures based on an examination of a limited sample and ruled 282 (28%) valid and 727 (72%) invalid.
>
> [...]
>
> The most difficult problem presented to the court in this case is how to deal with individual signatures specifically objected to by petitioner but never ruled upon by the referees because of time constraints. I am informed that this total comes to approximately 15,000 signatures with about 6,000 in Manhattan and 9,000 in the Bronx [...].
>
> [...]
>
> I have therefore come to the conclusion that the only practical solution to the problem is to apply a sample employing the limited line by line review by the referees. In so deciding, I am not unaware of the decision of the *Second Department in Ryan v. Sadowski, 71 A.D.2d 938, 939, 419 N.Y.S.2d 757 (1979)* in which the court (at the urging of the same law firm representing the petitioner herein) ruled that a sampling method is improper and that the trial "should not have been terminated without a full review of all the signatures." That decision was rendered at a date approximately three weeks prior to a primary for election of a judge of the Civil Court. The shorter period remaining before the upcoming election and the much greater number of signatures involved herein distinguish the present situation.

*See also Fossella v Dinkins*, 130 Misc 2d 52, 53-54 [Richmond Cnty Sup Ct 1985]:

> [...] Because of the expedited nature of these proceedings an oral application to confirm the referee's report was made. Petitioner's main objection was that the report was made on the basis of an extrapolation of the petitions reviewed, to date, and not upon a full line by line review of all 35 volumes of petitions containing in excess of 100,000 signatures. The referee in proceeding as she did and the Court in confirming her report were mindful of the decision of the Appellate Division,

[* 12]

Second Department in *Matter of Ryan v. Sadowski, 71 A.D.2d 938, 419 N.Y.S.2d 757.* In that case, the court determined that it was error for Special Term to have terminated a designating petition challenge without full review of all the signatures. Special Term had made its determination utilizing a ratio for the pages not completed to the ratio of valid signatures found on the pages examined.

Significant differences appear, however, in the matter before the Court. In *Ryan,* the petition in question was one designating a candidate for the office of Judge of the Civil Court of the City of New York and was, obviously, much shorter than the one at issue. Implicit within the Ryan decision was the Court's determination that had Special Term proceeded (utilizing referees) it could, in fact, have completed examination of the petition. The contrary is the case here.

Following the remand of this case from the Appellate Division, this Court directed a line by line examination of the petitions. Five referees worked diligently to complete their task. Their work required the Board of Election offices in five Boroughs to remain open late into the evening. Court reporters were required to work overtime as were employees of the Board of Elections, all at great expense to the taxpayers. Notwithstanding these great efforts, it was apparent to the chief referee that a line by line examination could not be completed by election day let alone at a time before that date sufficient to permit the inevitable appeals to follow this Court's decision. Faced with the option of continuing the examination without regard to the election date or committing even greater judicial and support resources to the effort at hand, with no real expectation of attaining a different result, this Court has opted to accept the referee's report as submitted. The rule of law is fundamentally one of reason tempered by human experience. To mechanically apply the *Ryan* case to the situation at bar (as petitioners urge) would be to convert the principle of stare decisis to one of judicial paralysis and would, impermissibly, result in petitioners obtaining by delay that which they failed to achieve by a review of the petitions.

Here, as noted above, the Board had deemed 5,851 signatures to be valid. This number included 3,816 signatures upon which the Board did not have jurisdiction to make a ruling (objections on the basis or forgery or non-matching signatures). To bring Respondent below the 4,000 necessary signatures, the referees would need to invalidate 1,852 of the signatures that the board had deemed valid (5,851 [total valid] - 1,852 [total] = 3,999).

A review of Petitioners' specification of objections reveals that the most common objections are: not registered (NR), not enrolled (NE), wrong address (WA), address insufficient (AI), illegible (ILL), and does not match (DNM). With the exception of the challenges on the grounds of illegibility and does not match, the referees ruled in accordance with the Board on most, if not all, challenges. This is because the referees would use the same source of information as the Board: namely, the Board's voter registration database. The exception is the "does not match" specification, which the Board was unable to consider, but the referees could (*see Trevisani v Karp,* 164 AD3d 1586 [4th Dept 2018] [authorizing the trial court to make findings regarding handwriting without the use of an expert]).

For practical purposes, for Petitioners to prevail at this juncture, the referees would need to complete their examination of the 3,816 signatures upon which the board could not make a ruling (F or DNM), and determine that 1852 of those signatures were invalid. This would mean they would need to find an invalid rate of 41%, or find that approximately every 2 out of 5 signatures did not match. As of Friday, April 25, the referees had made approximately 720 rulings, and the percentage of signatures they found to be invalid was 20%, which is nowhere near 41% Petitioners would need to prevail. Therefore, the Court concludes that even assuming *arguendo* it had reached the merits of this issue, the result would be the same.

[* 14]

Accordingly for the reasons discussed in detail above, it is hereby

**ORDERED** that Respondent Janice Chen's Motion to Dismiss is granted; and it is further

**ORDERED,** that the Petition is denied and dismissed.


This constitutes the decision, order and judgment of the Court.

HON. JEFFREY H. PEARLMAN
J.S.C.

| 4/28/25 | | | | JEFFREY H. PEARLMAN, J.S.C. | |
| :-: | | | | :-- | |
| **DATE** | | | | | |

| CHECK ONE: | | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
| :-- | :-: | :-: | :-- | :-: | :-- | :-: | :-- |
| | | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |